UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
WEST VALLEY KB VENTURE, LLC,

                        Plaintiff,

                                              MEMORANDUM & ORDER
          -against-                           20-CV-3278(JS)(AYS)

ILKB LLC, MICHAEL PARRELLA,
SCOTT FERRARI, and RYAN HEALY,

                        Defendants.
------------------------------------X
APPEARANCES
For Plaintiff:        W. Michael Garner, Esq.
                      Garner, Ginsburg & Johnsen, P.A.
                      5030 Broadway, Suite 631
                      New York, New York 10034

For Defendants
ILKB LLC and
Michael Parrella:     Peter G. Siachos, Esq.
                      Gordon & Rees LLP
                      18 Columbia Turnpike, Suite 220
                      Florham Park, New Jersey 07932

For Defendants
Scott Ferrari &
Ryan Healy:           No appearances.

SEYBERT, District Judge:

          Plaintiff West Valley KB Venture, LLC ("Plaintiff")

commenced this action against defendants for common law fraud,

negligent misrepresentation, and violations of the New York

Franchise Sales Act ("NYFSA"), arising out of Plaintiff's purchase

of a franchise from defendant ILKB LLC ("ILKB"). (Am. Compl., ECF

No. 16.)  Before the Court is defendants ILKB and Michael

Parrella's ("Parrella," and together with ILKB, the "Moving

1

Defendants") motion to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).[1]  For the reasons set forth below, the motion is GRANTED and leave to file a Second Amended Complaint is GRANTED.

<u>BACKGROUND</u>[2]

Defendant Parrella is the founder and Chief Executive Officer of ILKB, a company that franchises kickboxing studios. (Am. Compl. ¶¶ 1, 5-6, 9.)  Dedeuc D'Antonoli ("D'Antonoli"), who knew Parrella and that ILKB was offering franchises, spoke to James Lehrer ("Lehrer") about jointly purchasing franchises located in Arizona. (<u>Id.</u> ¶ 9.)  After Lehrer contacted ILKB in fall 2015, defendant Scott Ferrari ("Ferrari"), an officer of ILKB, made certain representations in a series of emails, including that ILKB "had systems and processes that work wonders," "all you have to do is plug & play, and have fun," none of the ILKB locations had closed, ILKB's owners were "ecstatic, happy and thrilled," ILKB had "rock solid" systems, and ILKB "handle[s] the heavy lifting of marketing your locations," among others. (<u>Id.</u> ¶¶ 7, 9.)  On December 16, 2015, Ferrari sent Lehrer a Franchise Disclosure Document ("FDD"), dated March 26, 2015. (<u>Id.</u> ¶ 10.)  The FDD was

---

[1] (Mot., ECF No. 26; Defs. Br., ECF No. 26-1; Pl. Opp., ECF No. 27; Defs. Reply, ECF No. 28.)

[2] The facts are drawn from the Amended Complaint and are assumed to be true for purposes of this Memorandum and Order.

not registered with New York state, as required, and contained several false statements and omissions, including that (1) "[n]o bankruptcy is required to be disclosed in this item," although Parrella filed a bankruptcy petition in 2008 and Parrella or ILKB's predecessor company was named in a lawsuit for fraud, violations of franchise laws, and theft of services; and (2) ILKB had not received rebates from suppliers, when it had in fact received rebates. (Id. ¶¶ 10-11.) The FDD also failed to disclose the number of franchised units that closed between 2014 and 2016. (Id. ¶ 11.)

The Amended Complaint continues that ILKB, Parrella, Ferrari, and Ryan Healy ("Healy," and together with ILKB, Parrella, and Ferrari, the "Defendants"), ILKB's sales person, made numerous misrepresentations in telephone conversations, and during "Discovery Day" held at ILKB's offices on January 14, 2016, including, among other things, that: ILKB franchises were "ideal" for absentee ownership; franchises were "breaking even" within one to two months; renewal rates did not matter; marketing was "figured out" and ILKB had no plans to collect a one percent marketing fee; and, ILKB franchise owners generated gross revenue from merchandise sales alone. (Id. ¶¶ 8, 12.) Based upon the FDD and Defendants' representations in emails and phone calls, D'Antonoli and Lehrer decided to purchase five territories and executed a

franchise agreement for one studio in South Jordan, Utah, through their investment vehicle, KB Fitness Ventures, LLC.  (Id. ¶ 14.)

Prior to opening the South Jordan location, D'Antonoli and Lehrer relied on Defendants' representations, recited above, and decided to open a second franchise location.  (Id. ¶ 15.) D'Antonoli and Lehrer formed Plaintiff for that purpose and, around August 2016, informed ILKB of their intention to purchase a second location in West Valley, Utah.  (Id.)  By that time, ILKB had updated the FDD to include material information regarding events that occurred after March 26, 2015, but did not provide the updated FDD to D'Antonoli or Lehrer.  (Id.)  Moreover, neither D'Antonoli nor Lehrer knew that ILKB was required to furnish them an updated FDD.  (Id. ¶ 17.)  ILKB agreed to proceed with the West Valley location, and the parties entered into a de facto agreement via email, that: (1) Plaintiff would use ILKB's trademarks and, in turn, Plaintiff would pay royalties or franchise fees to ILKB; (2) ILKB approved of the location; and (3) ILKB would handle "virtually all marketing."  (Id. ¶ 16.)

Relying on these representations, Plaintiff invested over $300,000 to obtain, build out, and equip the West Valley studio.  (Id. ¶ 17.)  From February 2017 to May 2019, it operated the West Valley studio, paid royalties to ILKB, and participated in ILKB's "Rainmaker point-of-sale system."  (Id.)  However, within six months after opening the West Valley studio, Lehrer spoke with

4

ILKB employees, including defendant Healy, regarding the studio's general lack of performance, including the failure to break even, the need for an owner on premises, and the lack of effective marketing, low member renewal rates and merchandise sales, among other problems.  (Id. ¶ 18.)  At some point, Lehrer permanently moved from Arizona to Utah to manage the franchises.  (Id. ¶ 20.) ILKB representatives "made excuses" and instructed Plaintiff to follow "ILKB's 'plan' for success."  (Id. ¶ 18.)

Plaintiff "rigorously" followed the "plan" until late 2019, when D'Antonoli and Lehrer discovered that ILKB made false representations regarding its franchises.  (Id. ¶¶ 18, 20–21.) Those representations include:  (1) franchised studios were suitable for absentee ownership; (2) ILKB handled marketing; (3) franchised studios "break even" in weeks or months; (4) there was a market to profitably sell ILKB franchise territories; (5) renewal rates were not important; (6) merchandise would comprise fifteen percent of gross income; (7) member conversion rates were 70 to 80 percent; and, (8) ILKB would not collect the one percent marketing fee.[3]  (Id. ¶ 20.)  Moreover, as alleged, ILKB, Ferrari, and Parrella knew they had a duty to disclose, but failed to disclose, that Parrella had been discharged from bankruptcy in 2008 and an ILKB affiliate was named in a lawsuit

---

[3] The Court refers to the eight alleged misrepresentations as the "Representations" and each a "Representation." (Am. Compl. ¶ 20.)

for violations of the NYFSA.  (Id. ¶ 21.)  If Plaintiff knew this information, it would not have agreed to the franchise agreement or built the studio.  (Id.)  In May 2019, Plaintiff stopped paying royalties to ILKB, removed ILKB's name from its business, and terminated the de facto franchise agreement.  (Id. ¶ 22.) Consequently, Plaintiff lost at least $450,000.  (Id. ¶ 23.)

## DISCUSSION

### I.  Legal Standard

To withstand a motion to dismiss, a complaint must contain factual allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This plausibility standard is not a "probability requirement" and requires "more than a sheer possibility that a defendant has acted unlawfully."  Id. (citation omitted).  When reviewing such a motion, the Court must liberally construe the complaint, accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Bacon v. Phelps, 961 F.3d 533, 540 (2d Cir. 2020) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)). At this stage, the Court considers only those "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which

judicial notice may be taken." <u>Allen v. WestPoint-Pepperell, Inc.</u>, 945 F.2d 40, 44 (2d Cir. 1991).

II.  <u>Analysis</u>

As discussed below, the Moving Defendants' motion to dismiss the Amended Complaint is granted.

A.  <u>The NYFSA Claims (Counts I and II) are Time-Barred</u>

First, the Moving Defendants argue that Plaintiff's NYFSA-based claims are barred by NYFSA's three-year statute of limitations. (<u>See</u> Defs. Br. at 4-5.)  Plaintiff responds that the Moving Defendants are equitably estopped from asserting the statute of limitations as a defense because they fraudulently concealed "critical facts" that prevented Plaintiff from timely pursuing its claims. (Pl. Opp. at 5-7; <u>see also</u> Am. Compl. ¶ 19.) The Court concludes that Plaintiff's NYFSA claims are time-barred.

The Amended Complaint asserts claims under NYFSA § 683 ("Section 683"), for Defendants' failure to provide an FDD registered with New York state (Count I), and under NYFSA § 687 ("Section 687"), for Defendants' false statements and omissions (Count II). (Am. Compl. ¶¶ 24-29 (Count I); <u>id.</u> ¶¶ 30-32 (Count II).)  NYFSA § 691(4) provides a remedy for violations of Sections 683 and 687, stating: "[a]n action shall not be maintained . . . unless brought before the expiration of three years after the act or transaction constituting the violation."  N.Y. Gᴇɴ. Bᴜs. Lᴀᴡ § 691(4).  The limitations period for claims under Sections 683

and 687 begins "when the franchises were purchased," and "continuous violations do not toll the statute of limitations." Kroshnyi v. U.S. Pack Courier Servs., 771 F.3d 93, 103-04 (2d Cir. 2014) (quoting United Mag. Co. v. Murdoch Mags. Distrib., Inc., 146 F. Supp. 2d 385, 407 (S.D.N.Y. 2001)).

The Court cannot find any authority supporting the proposition that equitable estoppel tolls NYFSA's limitations period. (See Pl. Opp. at 5-7.) In any event, Plaintiff's argument regarding equitable estoppel is "in truth a request for a discovery based toll on the statute of limitations." G.L.M. Sec. & Sound, Inc. v. LoJack Corp., No. 10-CV-4701, 2012 WL 4512499, at *5 (E.D.N.Y. Sept. 28, 2012) (Seybert, J.). And, "case law is quite clear that the New York Franchise Sales Act does not incorporate a 'date of discovery' rule for fraud-based claims," such as the fraud claim asserted here. June-Il Kim v. SUK Inc., No. 12-CV-1557, 2013 WL 656844, at *3 (S.D.N.Y. Feb. 22, 2013) (citing G.L.M., 2012 WL 4512499, at *5); accord Fantastic Enters., Inc. v. S.M.R. Enters., Inc., 540 N.Y.S.2d 131, 134 (N.Y. Sup. Ct. 1988) ("It should also be noted that no 'date of discovery' rule is provided for in General Business Law § 691(4), unlike that set forth in CPLR 213(8) for common law fraud actions"). "[T]o find otherwise would serve to emasculate the statute of limitations specifically provided for in Article 33 by the Legislature." Fantastic Enters., 540 N.Y.S.2d at 134. Therefore, Defendants are

not estopped from asserting the statute of limitations as a defense to Plaintiff's NYFSA claims.

Turning to the merits, the Court concludes that the NYFSA claims are time-barred.  The parties entered into the <u>de facto</u> franchise agreement between August 2016, when Plaintiff notified Defendants of its intent to pursue a second franchise, and February 2017, when Plaintiff opened the franchised business.  (Am. Compl. ¶¶ 15-17.)  The NYFSA claims are rooted in allegations that the parties agreed to the <u>de facto</u> franchise agreement (1) without an updated FDD, in violation of Section 683 (Count I); and (2) based on Defendants' fraudulent statements and omissions, in violation of Section 687 (Count II).  For both sections, "the time of the violation is the time of the sale[.]"  <u>June-Il Kim</u>, 2013 WL 656844, at *3; <u>Kroshnyi</u>, 771 F.3d at 103.  Plaintiff commenced this action on July 22, 2020, more than three years after the sale of the franchise.  (<u>See</u> Compl., ECF No. 1.)  Thus, the claims are barred by the statute of limitations.

It is of no moment that Defendants allegedly continued to "conceal[] the true reason why Plaintiff's studio was not performing as promised" (Pl. Opp. at 6), because the "[m]isrepresentations or omissions had been made . . . and plaintiffs had relied on such and were induced to act to their injury."  <u>Fantastic Enters.</u>, 540 N.Y.S.2d at 134.  Therefore, "[u]pon the entering into of the [<u>de facto</u>] franchise agreement .

. . [Plaintiff's] right to relief accrued and the three year statute of limitations was triggered." Id. Accordingly, Plaintiff's NYFSA claims are time-barred and must be dismissed. The dismissal is with prejudice because there is no basis to conclude that better pleading would cure this deficiency.

B.  Plaintiff Fails to Adequately Plead a Claim for Common Law Fraud (Count III)

Next, the Moving Defendants argue that the fraud claim must be dismissed because Plaintiff (1) lacks standing (Defs. Br. at 6-7); (2) fails to allege actionable misrepresentations and omissions (id. at 8-10); and (3) fails to plead fraud with particularity, as required by Federal Rule of Civil Procedure 9(b) ("Rule 9") (id. at 10-13). As discussed below, Plaintiff has standing to pursue a claim for fraud. However, upon review of the Amended Complaint, the claim is dismissed without prejudice.

1.  Plaintiff Has Standing to Pursue its Fraud Claim

The Moving Defendants contend that Plaintiff lacks standing to assert a cause of action for fraud because the claim is rooted in third-party reliance, a theory the New York Court of Appeals "explicitly rejected" in Pasternack v. Laboratory Corporation of America Holdings, 59 N.E.3d 485 (N.Y. 2016). (Defs. Br. at 5-7.) Specifically, they argue that Plaintiff did not exist at the time of the alleged misrepresentations or omissions and,

10

therefore, the Moving Defendants "could not have intended to induce Plaintiff's reliance."  (Id.; Defs. Reply at 4-5.)

To state a claim for fraud, a plaintiff must allege "a misrepresentation or a material omission of fact which was false and known to be false by [the] defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury."  Pasternack, 59 N.E.3d at 491 (alteration in original) (citation omitted).  In Pasternack, the New York Court of Appeals held there is no "common law cause of action under New York law for fraud in favor of a plaintiff where A deceives B, B acts in reliance on A's deception, and B's action in reliance on A's deception injures the plaintiff," or "Third-Party Reliance Claims."  Amusement Indus., Inc. v. Stern, No. 07-CV-11586, 2016 WL 6820744, at *3 (S.D.N.Y. Nov. 10, 2016) (citing Pasternack, 59 N.E.3d at 493), aff'd, 721 F. App'x 9 (2d Cir. 2018).  The Court of Appeals "carefully distinguished" cases where "A makes a deceptive statement to B, B conveys the deceptive statement to the plaintiff, and the plaintiff relies detrimentally on A's deceptive statement that was conveyed to him via B acting as a conduit," or "Conduit Claims."  Id.  To that extent, the Court of Appeals "left intact earlier New York authority holding that plaintiffs with Conduit Claims have legally sufficient fraud claims against A."  Id.  It explained:

> The cases that recognize third-party reliance
> cite favorably to Eaton Cole & Burnham Co. v
> Avery, (83 NY 31, 35 [1880]).  However, as
> noted by the District Court and Second Circuit
> here, Eaton is distinguishable from this case
> because in Eaton the third party acted as a
> conduit to relay the false statement to
> plaintiff, who then relied on the
> misrepresentation to his detriment ([citation
> omitted]).  Eaton and its progeny stand for
> the proposition that indirect communication
> can establish a fraud claim, so long as the
> statement was made with the intent that it be
> communicated to the plaintiff and that the
> plaintiff rely on it.

Pasternack, 59 N.E.3d at 492 (first alteration in original).

The Court is not persuaded that the Amended Complaint alleges an impermissible Third-Party Reliance Claim for fraud. Rather, the Amended Complaint alleges a cause of action akin to a Conduit Claim.  Specifically, the Amended Complaint alleges that Defendants made misrepresentations and omissions to Plaintiff's principals; the principals relied on those misrepresentations and omissions to form Plaintiff; and Plaintiff, through its principals, relied on the misrepresentations and omissions to its detriment when purchasing the second franchised studio.  (See, e.g., Am. Compl. ¶¶ 15-16.)  Thus, Pasternack's holding is no bar to Plaintiff's fraud claim(s).  Cf. Pasternack, 59 N.E.3d at 491-93; cf. Tesla Wall Sys., LLC v. Related Cos., L.P., No. 17-CV-5966, 2018 WL 4360777, at *4-5 (S.D.N.Y. Aug. 15, 2018) (denying leave to reinstate, finding the complaint failed to state a fraud

claim where, as alleged, the plaintiff's injuries arose out of a third-party's reliance on the defendant's false representations).

Acknowledging that Plaintiff, as an entity, may not have existed until after Defendants made the alleged misrepresentations and omissions,[4] the issue turns on whether the Amended Complaint plausibly alleges that Defendants conveyed those statements to Plaintiff's principals "with the intent that it be communicated to" Plaintiff. Pasternack, 259 N.E.3d at 492. At this stage, the Court concludes that the Amended Complaint sufficiently contains such allegations, including that "Lehrer and D'Antonoli decided to open a second location and formed [Plaintiff] for that purpose . . . [and] notified ILKB of that intent," ILKB "approve[d] going forward with" the West Valley outlet, and "Defendants made representations of fact and omissions of material facts . . . with the intent that [Plaintiff] rely upon them in deciding to enter into an agreement and invest in an ILKB franchise for [Plaintiff]." (Am. Compl. ¶¶ 15, 34; id. ¶¶ 33-36.) While the Moving Defendants argue that that they "could not have intended to induce Plaintiff's reliance" because "Plaintiff did not exist" (Defs. Br. at 7), or that "Defendants did not know and could not have known that some non-existent entity would rely on future statements" (Defs. Reply

---

[4] The Court takes judicial notice of Plaintiff's certificate of incorporation "given that these documents are publicly filed." Gentry v. Kaltner, No. 17-CV-8654, 2020 WL 1467358, at *6 (S.D.N.Y. Mar. 25, 2020).

at 5), the Court cannot resolve questions of fact surrounding the Moving Defendants' knowledge and intent, or lack thereof, on a motion to dismiss.[5]  See also Mount Holly Kickboxing, LLC v. Franchoice, Inc., No. 19-CV-0300, 2021 WL 1117968, at *9-10 (D. Minn. Mar. 24, 2021) (finding plaintiff had standing to assert a fraud claim arising out of the purchase of an ILKB franchise, where there was evidence that the defendant "intended" the individual plaintiff "and his future LLC" (the other plaintiff) "to rely on [defendant's] representations to purchase and operate the" franchise, citing Restatement (Second) of Torts § 531, inter alia). Thus, at this juncture, Plaintiff has standing and the Moving Defendants are not entitled to relief on this basis.

### 2.  Plaintiff Fails to Plead Fraud with Particularity

The Moving Defendants aver that the Amended Complaint fails to plead fraud with particularity as required by Rule 9(b). (Defs. Br. at 10-12.)  Rule 9(b) requires a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) (citation omitted).

---

[5] In any event, as discussed below, the Amended Complaint fails to specify when many of the alleged misrepresentations and omissions were made, including whether they were made before or after D'Antonoli and Lehrer established Plaintiff.

Here, Plaintiff alleges that Defendants made eight "particular" Representations, defined above, later discovered to be false, via "emails" in "the fall of 2015" (Am. Compl. ¶ 9), "during telephone discussions" and at "Discovery Day" on January 14, 2016 (id. ¶ 12), or in "monthly" conversations "[s]tarting approximately six months after the West Valley studio opened" (id. ¶ 18). These generalized, undifferentiated allegations fail to satisfy Rule 9(b)'s "when" and "where" requirements. And, "it is insufficient to state that the misrepresentations occurred over" unspecified periods of time. Hatteras Enters. Inc. v. Forsythe Cosm. Grp., Ltd., No. 15-CV-5887, 2018 WL 1935984, at *11 (E.D.N.Y. Apr. 23, 2018) (collecting cases); see also ILKB, LLC v. Singh, No. 20-CV-4201, 2021 WL 2312951, at *4 (E.D.N.Y. June 7, 2021) ("Singh I"). Furthermore, at times, the Amended Complaint fails to attribute the alleged fraudulent conduct or Representation to a particular defendant. (See, e.g., Am. Compl. ¶ 12, subparas. 7-9; id. ¶¶ 18, 20.) "When multiple defendants are alleged to have engaged in the fraud, and made material misrepresentations, the complaint must clearly state which defendants made which statements." Hatteras Enters., 2018 WL 1935984, at *10 (collecting cases). Therefore, Plaintiff has failed to plead fraud with particularity and the claim is dismissed without prejudice.

For the avoidance of doubt, the Court considers the Moving Defendants' argument that Plaintiff failed to adequately

plead intent/scienter.  (Defs. Br. at 12.)  To establish scienter, a plaintiff must allege facts that "give rise to a strong inference of fraudulent intent."  ILKB, LLC v. Singh, No. 20-CV-4201, 2021 WL 3565719, at *6 (E.D.N.Y. Aug. 12, 2021) ("Singh II") (quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)).  This may be accomplished by alleging: "(a) facts showing that []defendants had 'both motive and opportunity to commit fraud,' or (b) facts 'constitut[ing] strong circumstantial evidence of conscious misbehavior or recklessness.'"  Id. (second alteration in original) (quoting Lerner v. Fleet Bank, 459 F.3d 273, 290-91 (2d Cir. 2006)).  The Amended Complaint here alleges that "at the time" each individual Representation was made, Defendants knew the Representation was false, or that Defendants "did not have information to support" the Representation.  (See Am. Compl. ¶ 20.)  These allegations were incorporated into the fraud count.  (Id. ¶ 33.)  Thus, "[b]eing aware of facts that undercut the truth of their statements 'give[s] rise to a strong inference' that [Defendants] intended to defraud []plaintiff by making knowingly false representations."  Singh II, 2021 WL 3565719, at *6 (first alteration in original) (quoting Shields, 25 F.3d at 1128).  Accordingly, Plaintiff adequately pled intent.

3.   The Amended Complaint Alleges Some Actionable Misrepresentations or Omissions

Although not required, the Court considers whether the alleged misrepresentations and omissions are actionable under New York law.

a.   Matters of Public Record

While not a model of clarity, it appears the Amended Complaint alleges that Defendants had a duty to disclose (1) Parrella's personal bankruptcy and (2) litigation involving an "affiliate" entity in 2012; Defendants affirmatively withheld that information to defraud Plaintiff; and Plaintiff relied on that information to its detriment.  (Am. Compl. ¶¶ 1, 11, 21, 34-36.) The Moving Defendants argue that Plaintiff cannot establish justifiable reliance, a required element of fraud, because these omissions were matters of public record.  (Defs. Br. at 8-9.) Plaintiff concedes that Parrella's personal bankruptcy and the litigation were matters of public record, but counters that Defendants misrepresented their affirmative duty to disclose the information.  (Pl. Opp. at 9–10.)

The Court construes this claim as one for fraudulent omission, which is "a permutation of the common law action for fraud."  Century Pac., Inc. v. Hilton Hotels Corp., No. 03-CV-8258, 2004 WL 868211, at *9 (S.D.N.Y. Apr. 21, 2004) (citation omitted).  "Where a plaintiff seeks to show fraud by omission," as

is the case here, "it must also prove that the defendant had a duty to disclose the concealed fact." 246 Sears Rd. Realty Corp. v. Exxon Mobil Corp., No. 09-CV-0889, 2012 WL 4174862, at *12 (E.D.N.Y. Sept. 18, 2012) (quoting Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 181 (2d Cir. 2007)). Under New York law, that duty arises in three situations:

> first, where the party has made a partial or ambiguous statement, on the theory that once a party has undertaken to mention a relevant fact to the other party it cannot give only half of the truth; second, when the parties stand in a fiduciary or confidential relationship with each other; and third, where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.

Century Pac., 2004 WL 868211, at *9 (quoting Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993)).

Here, Plaintiff is correct that it adequately alleged Defendants' affirmative disclosure duty under the first Brass scenario. Assuming the allegations in the Amended Complaint to be true, in the March 26, 2015 FDD, Defendants affirmatively misrepresented that "[n]o bankruptcy is required to be disclosed in this item," when they were required, but failed, to disclose (1) Parrella's personal bankruptcy and (2) an affiliate's prior litigation history. (Am. Compl. ¶¶ 1, 10-11, 21, 34-36.) This statement "triggered a duty to disclose related or corrective

information" under the first <u>Brass</u> situation.[6]  See <u>Century Pac.</u>,
2004 WL 868211, at *9.

However, the inquiry does not end there.  In addition to
"a duty to disclose material information," a "fraudulent omission
claim <u>must</u> allege the usual elements of fraud -- including a
material omission of fact, knowledge of that fact's falsity, intent
to induce reliance, <u>justifiable or reasonable reliance by the
plaintiff on the omission</u>, and damages."  <u>Anhui Konka Green
Lighting Co. v. Green Logic LED Elec. Supply, Inc.</u>, No. 18-CV-
12255, 2019 WL 6498094, at *11 (S.D.N.Y. Dec. 3, 2019) (emphasis
added) (internal quotation marks and citations omitted).  While
"reliance is not generally a question to be resolved as a matter
of law on a motion to dismiss," <u>ACA Fin. Guar. Corp. v. Goldman,
Sachs & Co.</u>, 25 N.Y.3d 1043, 1045 (N.Y. 2015) (citation omitted),
it is well-established that "[r]eliance is not 'justified' . . .
when the plaintiff reasonably could have discovered the true facts

---

[6] To the extent Plaintiff argues that Defendants' duty to disclose
in this context arises out of violations of NYFSA's requirements,
the Court is unaware of any authority providing that Plaintiff can
enforce a NYFSA violation via an independent fraud claim.  In any
event, as discussed above, this NYFSA-based claim is time-barred.
To the extent Plaintiff seeks recovery on the ground that the FDD
does not comply with the Federal Trade Commission's ("FTC")
regulations governing franchise disclosure documents (Pl. Opp. at
10 (citing 16 C.F.R. § 436.5(d)), it has "failed to point to any
New York statute or regulation providing it with the right to sue
to enforce these requirements, and courts have uniformly rejected
the claim that a private right of action to enforce the FTC's
requirements exists." <u>Coraud LLC v. Kidville Franchise Co., LLC</u>,
121 F. Supp. 3d 387, 397 n.6 (S.D.N.Y. 2015) (citation omitted).

with due diligence." <u>Khindri v. Getty Petroleum Mktg., Inc.</u>, 939 N.Y.S.2d 741 (N.Y. Sup. Ct. 2011); <u>246 Sears</u>, 2012 WL 4174862, at *14-15 (collecting cases); <u>Gen. Motors Corp. v. Villa Marin Chevrolet, Inc.</u>, No. 98-CV-5206, 2000 WL 271965, at *29-30 (E.D.N.Y. Mar. 7, 2000).

It follows that the fraud by omission claim fails as a matter of law because Plaintiff cannot plausibly allege justifiable reliance where, as here, Parrella's bankruptcy case and an affiliate's 2012 litigation were matters of public record and "could have been uncovered with due diligence." <u>Crotona 1967 Corp. v. Vidu Bros. Corp.</u>, 925 F. Supp. 2d 298, 312 (E.D.N.Y. 2013). Moreover, there are no allegations in the Amended Complaint to conclude that such information was "peculiarly within" the Defendants' knowledge "<u>and</u> w[as] willfully misrepresented." <u>Kurtz v. Foy</u>, 884 N.Y.S.2d 498, 501 (N.Y. App. Div. 3d Dep't 2009) (emphasis added). Accordingly, even if Defendants "willfully misrepresented" that "[n]o bankruptcy is required to be disclosed" in the FDD, it remains that lawsuits and bankruptcy cases are matters of public record that are not "peculiarly within" Defendants' knowledge. <u>Compare</u> <u>Gen. Motors Corp.</u>, 2000 WL 271965, at *29-32, <u>with</u> <u>Ogunsanya v. Langmuir</u>, No. 08-CV-0940, 2008 WL 4426590, at *3-5 (E.D.N.Y. Sept. 26, 2008). Therefore, the fraudulent omission claim must be dismissed.

b.   <u>Predictions and Opinions</u>

The Moving Defendants next argue that the Representations are non-actionable statements of predictions of future events or opinions. (Defs. Br. at 9-10.) Statements "which are mere 'puffery' or opinions as to future events are not sufficient to establish a fraud claim." <u>N.Y. Islanders Hockey Club v. Comerica Bank-Texas</u>, 71 F. Supp. 2d 108, 118 (E.D.N.Y. 1999) (citation omitted)); <u>Dragon Inv. Co. II LLC v. Shanahan</u>, 854 N.Y.S.2d 115, 117 (N.Y. App. Div. 1st Dep't 2008). "To constitute actionable fraud, the false representation relied upon must relate to a past or existing fact, or something equivalent thereto, as distinguished from a mere estimate or expression of opinion." <u>Zanani v. Savad</u>, 630 N.Y.S.2d 89, 90 (N.Y. App. Div. 2d Dep't 1995). Put differently, "the alleged misrepresentation must be factual in nature and not promissory or relating to future events that might never come to fruition." <u>Hydro Invs., Inc. v. Trafalgar Power Inc.</u>, 227 F.3d 8, 20-21 (2d Cir. 2000) (collecting cases).

Upon review of the Amended Complaint, the Court concludes that the Fourth, Sixth, and Eighth Representations, defined <u>supra</u> Note 3, express non-actionable "predictions about future performance." <u>Singh II</u>, 2021 WL 3565719, at *7. As alleged, those Representations use "predictive language," <u>id.</u>, such that a "franchisee <u>could</u> easily resell undeveloped territories at a substantial profit," that "[f]ifteen percent of

gross revenue <u>would</u> come from sales of merchandise alone," and that "ILKB <u>had no plans to collect</u> the one percent marketing fee." (Am. Compl. ¶ 20, subparas. 4, 6, 8; <u>id.</u> ¶ 12, subparas. 2, 7, 9.) Thus, Plaintiff cannot state a fraud claim based on these Representations.

The remaining five Representations, regarding absentee ownership, ILKB's marketing, renewal and conversion rates, and franchised studios "breaking even," sufficiently convey historical statistics, actions, or facts regarding franchisees in the ILKB system to support a claim for fraud. See <u>Singh II</u>, 2021 WL 3565719, at *7 (finding identical, or similar, allegations against ILKB sufficient to state a claim for fraud); (Am. Compl. ¶ 20, subparas. 1-3, 5, 7; <u>id.</u> ¶ 12, subparas. 1, 3-6, 8.) Finally, to the extent alleged, the Court finds that allegations regarding statements in the FDD that (1) no ILKB location closed, when several had closed between 2014 to 2016, and (2) Defendants did not receive rebates from suppliers, when they had received rebates, relate to "past or existing" facts and are also actionable in fraud.

C.   Plaintiff Fails to Adequately Plead a Claim for
      Negligent Misrepresentation (Count IV)

Finally, the Moving Defendants argue that the negligent misrepresentation claim (Count IV) must be dismissed, contending the Amended Complaint fails to plead the required "special relationship" because Plaintiff "did not exist when Defendants made the alleged" misrepresentations. (Defs. Br. at 7.) The Court construes this argument as asserting Plaintiff lacks standing to bring this claim. The Moving Defendants do not cite any authority for this proposition in the context of negligent misrepresentation. At this juncture, the Court concludes that Plaintiff has standing to pursue this claim, for the same reasons that Plaintiff has standing to pursue a claim for fraud, see supra.

However, for different reasons, the Court finds that the negligent misrepresentation claim must be dismissed. To state such a claim, a plaintiff must allege:

> (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.

Singh I, 2021 WL 2312951, at *4 (quoting Hydro, 227 F.3d at 20).

Here, the Amended Complaint is devoid of allegations regarding a special relationship between the parties.  To the extent the Plaintiff alleges a special relationship solely by virtue of the franchisor-franchisee relationship, it is well-settled that "the relationship between franchisor and franchisee does not constitute the sort of relationship needed to support a negligent misrepresentation claim."  Singh I, 2021 WL 2312951, at *5 (quoting JM Vidal, Inc. v. Texdis USA, Inc., 764 F. Supp. 2d 599, 625 (S.D.N.Y. 2011)).  And here, there are no facts in the Amended Complaint suggesting "that this case presents an exception to the general rule."  JM Vidal, 764 F. Supp. 2d at 625-26; but compare supra Note 6, with Fam. Wireless #1, LLC v. Auto. Techs., Inc., No. 15-CV-1310, 2016 WL 183475, at *11-12 (D. Conn. Jan. 14, 2016) (denying motion to dismiss, finding the economic loss doctrine did not bar negligent misrepresentation claim under New York law where the plaintiffs alleged that defendant "furnished them with FDDs, with the expectation that these plaintiffs would rely upon the FDDs in deciding whether to enter into a franchise agreement, and that the FDDs omitted a material fact that [defendant] knew was false" and defendant "had a legally imposed duty to furnish complete and accurate FDDs, and to update their FDD with any material changes" pursuant to 16 C.F.R. § 436.2).  Therefore, the negligent misrepresentation claim is dismissed without prejudice.

III. <u>Leave to Amend</u>

It is "within the sound discretion of the district court to grant or deny leave to amend," which should be freely given "when justice so requires." <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 200 (2d Cir. 2007); FED. R. CIV. P. 15(a)(2). "[A] district court may deny leave to amend" when "amendment would be futile because the problem with the claim 'is substantive . . . [and] better pleading will not cure it.'" <u>Reynolds v. City of Mount Vernon</u>, No. 14-CV-1481, 2015 WL 1514894, at *5 (S.D.N.Y. Apr. 1, 2015) (alteration in original) (quoting <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000)).

While Plaintiff has already filed an Amended Complaint as of right, the Court finds that some of the issues raised herein, and by the Moving Defendants, might be resolved by a more detailed and organized pleading. <u>See</u> <u>Singh II</u>, 2021 WL 3565719, at *7. Plaintiff is thus GRANTED leave to file a Second Amended Complaint within thirty days of, and consistent with, this Memorandum and Order.

CONCLUSION

       For the reasons stated, the Moving Defendants' motion to dismiss (ECF No. 26) is GRANTED.  The NYFSA claims (Counts I and II) are barred by the statute of limitations and DISMISSED with prejudice.  The fraud (Count III) and negligent misrepresentation (Count IV) claims are DISMISSED without prejudice.  Plaintiff is GRANTED leave to file a Second Amended Complaint within thirty (30) days of, and consistent with, this Memorandum and Order. Plaintiff is warned that if it does not file a Second Amended Complaint, judgment will enter and this case will be marked closed.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     September _13_, 2021
          Central Islip, New York